**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **PAUL M. NGOBENI** | : | **CIVIL ACTION** |
| Plaintiff | : | NO.   3:02 CV 1124(MRK) |
| **vs.** | : | |
| **SHARON A. HARPER** | : | |
| Defendant | : | DECEMBER 10, 2003 |

**PLAINTIFF'S TRIAL MEMORANDUM**

The plaintiff, Paul M. Ngobeni, submits the following trial memorandum.

**1. Trial Counsel**

A.   For Plaintiff:   Paul Ngobeni, Esq.(ct 08187)
914 Main Street Suite 206
East Hartford, CT 06108
(860) 289-3155

B.   For Defendant   (If motion to disqualify denied)
Francis Miniter:Esq
Miniter & Associates
147 Charter Oak Ave.
Hartford, CT  06103-3499
(860) 560-2590

**2.   Jurisdiction**

A. Jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1), Plaintiff being a citizen of Connecticut, and Harper being a citizen of Kentucky, and the claimed damages exceeding $75,000.   The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367.

B. The jurisdiction of this Court is not disputed.

**3.    JURY/NON-JURY TRIAL INFORMATION**

This case is to be tried to the Jury on all claims.

**4.    LENGTH OF TRIAL:**

The plaintiff expects that the trial will last between 1- 2 and half days in total.

**5.    Further Proceedings:**

No further proceedings are expected; the plaintiff notes that no settlement conference has been scheduled by the Court in this matter. As discussed during the telephonic conference with the Court, a Motion to Disqualify defendant's counsel Miniter accompanies this Trial Memorandum.

**6.    NATURE OF CASE:**

**A.    Plaintiff's Statement of The Case:**

I.  **Plaintiff Claim Of Vexatious Suit**

Plaintiff asserts that the defendant Sharon Harper acting individually and in concert with Francis Miniter, Christine Corriveau and others, caused false charges of violation of the Rules of Professional Conduct to issue against the plaintiff, assisted in the prosecution of said charges and continued pursuing the said charges using perjured testimony even after it became clear that her charges were completely without substance. Defendant, was motivated in the pursuit of the said charges against the plaintiff not by a belief that the charges had any factual or legal merit or that probable cause for their issuance existed. By her own admission, Harper acted for improper, illegal, and wrongful purpose, to-wit: Harper pursued a frivolous grievance against plaintiff for an alleged refusal to turn over her file despite the existence of a valid attorney's lien and even after the said files were given to successor counsel. Harper and her agents conspired to and eventually offered perjured testimony in a hearing before the Statewide

Grievance committee by falsely claiming that plaintiff failed to turn over the files until after August 2000.  Harper pursued the so-called grievance against plaintiff despite the knowledge that her files had been turned over when a letter of protection was provided to plaintiff.   Harper acted out of spite and malice to vex plaintiff, to cause plaintiff to spend inordinate amount of time in grievance proceedings and to force plaintiff to give up his claim for fees.   Defendant perjured herself and lied to the Statewide Grievance Committee in an attempt to continue baseless charges against the plaintiff.  The Statewide Grievance Committee subsequently dismissed the charges against plaintiff and the proceedings terminated in plaintiff's favor.   As a direct result of the defendant's violations, plaintiff suffered economic damages, emotional distress and was injured.  Plaintiff requests compensatory and punitive damages in an amount this Court shall consider to be just and fair.   There are four elements that a plaintiff must prove in a claim of vexatious litigation. Under Connecticut law, a plaintiff is required to prove that: (1) the defendant initiated or procured the institution of proceedings against the plaintiff; (2) those proceedings terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice. See, generally, Osp, Inc. v. The Aetna Casualty and Surety Co., 256 Conn. 343 (2001).   "In a vexatious suit action, the defendant is said to have acted with `malice' if he acted primarily for an improper purpose; that is, "for a purpose other than that of securing the proper adjudication of the claim on which [the proceedings] are based'; 3 Restatement (Second), Torts § 676. . . .  Thus, while malice may be inferred from the lack of probable cause, lack of probable cause may not be inferred from malice." (Citations omitted.) DeLaurentis, 220 Conn. at 256 n. 16. See also, Ancona v. Manafort Brothers, Inc., 56 Conn. App. 701, 710, 746 A.2d 184, cert. denied, 252 Conn. 954 (2000).

**(II).   Defamation Claim**

The basis of this claim is the false statements of incompetence or lack of skills made by Harper about plaintiff to other persons outside court or the grievance committee proceedings. Commencing on or about October 2000 and continuing through February 2002, defendant frequented an establishment known as "Halls' Restaurant" where she regularly consumed alcohol and regularly discussed plaintiff with several patrons of the bar including one Roney Harris.  Defendant maliciously published false reports that plaintiff was incompetent, that plaintiff had stolen from her and/or unlawfully refused to release her files or personal property with criminal intent, and that plaintiff had been "found guilty" of incompetence and larceny by the Grievance Committee in his representation of Harper or handling of her files.  In communications these false and defamatory statements Harper intended to mean that Plaintiff could not be trusted to practice law and the person to whom the defamatory matter was communicated understood the words to have that meaning.  The said defamatory statement of  Harper as aforesaid did and were calculated to cause great injury to the Plaintiff.  The defendants' charges of incompetence and lack of skill are actionable under Connecticut law.  In Proto v. Bridgeport Herald Corporation, 136 Conn. 557, 566, 72 A.2d 820 (1950), the court said:  "It is well settled that a libel is actionable per see if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his (sic) profession or business."   See also later case of   Moriarty v. Lippe, 162 Conn. 371, 386, 294 A.2d 326 (1972).

Relief Sought:     Plaintiff seeks damages including punitive damages, and emotional  distress damages.

**(iii)    Plaintiff's Response To Counter-Claim:**

**Defendant's counter-claim is frivolous.**   Harper, Corriveau and Miniter deliberately sought to pursue frivolous, unfounded charges of ethical violations against plaintiff with the State-wide grievance committee in an effort to deny the plaintiff any payment of fees and expenses in connection with the Harper case.   In furtherance of their scheme, Harper, Corriveau and Miniter engaged in the following acts: Minter and Harper sent an associate from their law firm to accompany Harper to a grievance committee hearing where they both lied about the transfer of the file from plaintiff.  Within three months after plaintiff transferred the file to Harper's counsel and based almost entirely on the work performed by plaintiff, Harper obtained a favorable jury verdict of about $4.6 million dollars.  During the course of the jury trial on the common law claims Harper, Miniter and Corriveau recklessly or negligently failed to offer into evidence the contingency fee agreement between plaintiff and Harper or the plaintiff's claim for attorneys fees and costs as stated to both Harper and her attorneys.  Harper and her agents knew or should have known that proof of the plaintiff's fees and costs was mandatory and should have been offered in support of the claim for punitive damages.   Harper and her agents knew or should have known that punitive damages, which in Connecticut are limited to attorney's fees less taxable costs; "may be awarded by a jury whether the defamation is actionable per se or per quod." 50 Am. Jur. 2d, Libel and Slander § 379(1995).  Harper and her agents negligently failed to offer plaintiff's testimony; they failed to have Harper testify to the jury regarding the fees and costs owed to plaintiff and they failed to offer the contingency fee agreement and plaintiff's bill.  Because of Harper's failure to take any of the foregoing steps, the matter of plaintiff's legal fees was never properly submitted to the jury, and the punitive damages based on plaintiff's fees and costs were never properly

determined by the jury. As a result of Harper's actions or omissions, a punitive damages award of $1.6 million awarded by the jury was reduced by the District Court to a mere $59,000 based on Miniter's claim for fees and costs.

The jury properly awarded Harper $1.6 million in punitive damages. Because of Harper and Miniter's failure to offer evidence of Harper's retainer agreement with the plaintiff, the Court ordered a remittur of the $1.6 million in punitive damages which caused plaintiff to lose over $1 million in fees. Plaintiff, as a discharged attorney in the Harper v. MDC case had no standing to file any pleadings, including affidavits and fee petitions. The task of properly presenting evidence to the jury fell on Harper and her incompetent attorneys, Miniter and Corriveau. They were woefully inadequate in this regard.

.

**7.     Trial by Magistrate Judge:**

The parties do not consent to a trial before a Magistrate Judge.

**8.     List of Witnesses**

   **A.     Plaintiff's Witnesses:**

i. **Paul M. Ngobeni**, 914 Main Street, East Hartford, CT 06108: Mr. Ngobeni will testify regarding the allegations in his complaint and his damages.

ii. **Roney Harris, 71 Chester Street, East Hartford**. Mr. Harris will testify that Sharon Harper told him and other patrons at Hal's Restaurant and Bar that plaintiff was incompetent, that plaintiff had stolen and/or refused to release her files or personal property, and that plaintiff had been "found guilty" of incompetence by the Grievance Committee in his representation of Harper or handling of her files.

iii. **Carlton Hume, 125 Hungerford Street, Hartford, CT**- Mr. Hume is expected to testify that Sharon Harper admitted to him that she was asked by Miniter and Corriveau to file and continue prosecuting a frivolous grievance against the plaintiff with the Statewide Grievance Committee because the said grievance and/or any adverse finding against plaintiff would force the plaintiff to give up his claim to any attorneys' fees in a manner that would benefit both Harper and Miniter (the successor counsel).

iv. **Francis Miniter,** 147 Charter Oak Ave. Hartford, CT 06103-3499, (860) 560-2590. Miniter will testify as adverse witness regarding the circumstances of the filing and continuation of the grievance proceedings against plaintiff, including but not limited to proffer of perjured testimony, his incompetent presentation of the Harper case to the

jury and to the Federal Court judge. Miniter will testify that Minter and Harper sent an associate from Miniter's law firm to accompany Harper to a grievance committee hearing where they both lied about the transfer of the file from plaintiff. Miniter will testify that within three months after plaintiff transferred the file to Harper's counsel and based almost entirely on the work performed by plaintiff, Harper obtained a favorable jury verdict of about $4.6 million dollars. During the course of the jury trial on the common law claims Harper, Miniter and Corriveau recklessly or negligently failed to offer into evidence the contingency fee agreement between plaintiff and Harper or the plaintiff's claim for attorneys fees and costs as stated to both Harper and her attorneys. Harper and her agents knew or should have known that proof of the plaintiff's fees and costs was mandatory and should have been offered in support of the claim for punitive damages. Harper and her agents knew or should have known that punitive damages, which in Connecticut are limited to attorney's fees less taxable costs; may be awarded by a jury whether the defamation is actionable per se or per quod." 50 Am. Jur. 2d, Libel and Slander § 379(1995). Harper and her agents negligently failed to offer plaintiff's testimony; they failed to have Harper testify to the jury regarding the fees and costs owed to plaintiff and they failed to offer the contingency fee agreement and plaintiff's bill. Because of Harper's failure to take any of the foregoing steps, the matter of plaintiff's legal fees was never properly submitted to the jury, and the punitive damages based on plaintiff's fees and costs were never properly determined by the jury. As a result of Harper's actions or omissions, a punitive damages award of $1.6 million awarded by the jury was reduced by the District Court to a mere $59,000 based on Miniter's claim for fees and costs. Miniter will be forced to testify as to his personal participation in the scheme and pattern and practice by his law firm to encourage frivolous filing of grievances against plaintiff as a

means of intimidating plaintiff into releasing his valid attorneys liens and transferring files to Miniter without the usual protections afforded attorneys in cases of transfers of files.

v. **Christine Corriveau,** , 147 Charter Oak Ave. Hartford, CT 06103-3499, (860) 560-2590. Corriveau will testify as adverse witness regarding the circumstances of the filing and continuation of the grievance proceedings against plaintiff, including but not limited to proffer of perjured testimony, her incompetent presentation of the Harper case to the jury and to the Federal Court judge. Corriveau will testify that Minter and Harper sent an associate from Miniter's law firm to accompany Harper to a grievance committee hearing where they both lied about the transfer of the file from plaintiff. Corriveau will testify that within three months after plaintiff transferred the file to Harper's counsel and based almost entirely on the work performed by plaintiff, Harper obtained a favorable jury verdict of about $4.6 million dollars. During the course of the jury trial on the common law claims Harper, Miniter and Corriveau recklessly or negligently failed to offer into evidence the contingency fee agreement between plaintiff and Harper or the plaintiff's claim for attorneys fees and costs as stated to both Harper and her attorneys. Harper and her agents knew or should have known that proof of the plaintiff's fees and costs was mandatory and should have been offered in support of the claim for punitive damages. Harper and her agents knew or should have known that punitive damages, which in Connecticut are limited to attorney's fees less taxable costs; may be awarded by a jury whether the defamation is actionable per se or per quod." 50 Am. Jur. 2d, Libel and Slander § 379(1995). Harper and her agents negligently failed to offer plaintiff's testimony; they failed to have Harper testify to the jury regarding the fees and costs owed to plaintiff and they

    failed to offer the contingency fee agreement and plaintiff's bill.  Because of Harper's failure to take any of the foregoing steps, the matter of plaintiff's legal fees was never properly submitted to the jury, and the punitive damages based on plaintiff's fees and costs were never properly determined by the jury.  As a result of Harper's actions or omissions, a punitive damages award of $1.6 million awarded by the jury was reduced by the District Court to a mere $59,000 based on Miniter's claim for fees and costs.  Corriveau will be forced to testify as to her personal participation in the scheme and pattern and practice by Miniter's law firm to encourage frivolous filing of grievances against plaintiff as a means of intimidating plaintiff into releasing his valid attorneys liens and transferring files to Miniter without the usual protections afforded attorneys in cases of transfers of files.  No less than three such grievances or cases were filed against plaintiff with the active participation and encouragement of Miniter and Corriveau and the said grievances were all dismissed.

vi. **Betheona Guiles**, Last known address is in possession of Miniter. Guiles will testify as adverse witness regarding Miniter's dishonest business practices of encouraging, aiding and abetting the filing of frivolous grievances by his clients in order to profit from other attorney's work. Guiles will testify that Miniter offered perjured testimony at a grievance hearing involving the plaintiff.

vii. **Sharon A. Harper**, 2901 Waldoah Beach Road, Louisville, KY 40207.  Harper will testify as adverse witness regarding Miniter's dishonest business practices of encouraging, aiding and abetting the filing of frivolous grievances by his clients in order to profit from other attorney's work. Harper will testify regarding the allegations of the complaint.

viii. **Attorney Kevin Randolph**: Prior to the settlement conference and without prior notice to Plaintiff, Harper had engaged in unprofessional acts in her dealings with Randolph,

which forced Randolph to withdraw from representing Harper just three weeks after he first filed his appearance.

9. **Exhibits**

    **A. Plaintiff's Exhibits:**

1. Retainer Agreement with Harper.
2. Trial memorandum and Attachments in Harper vs. MDC,
3. Jury Verdict and Judgment in Harper vs. MDC,
4. Correspondence from attorney Kevin Randolph that Harper had retained him to represent her in the case against the MDC.
5. Correspondence from Harper re: hiring of Randolph as additional counsel.
6. June 14, 1999 letter from Plaintiff to Harper.
7. July 26, 1999 letter from Plaintiff to Harper.
8. August 1999, letter from Appleton and Appleton to plaintiff, regarding transfer of "*contents of all files any and all information, evidence, materials and documents of any kind (including but not limited to pleadings, transcripts, correspondence, fee agreements, decisions, notes and reports) concerning Ms. Harper.*"
9. September 14, 1999 letter from Appleton's office informing Plaintiff that Evans would not be returning to Plaintiff's office as agreed and that the said attorneys were no longer interested in the Harper case.
10. September 20, 1999 letter from Plaintiff to Ms. Harper.
11. Correspondence between Plaintiff and attorneys Rattigan and Murphy.
12. May 2000, letter from Corriveau and Miniter to protect plaintiff's fees based on the contingency fee agreement with Harper.

13. Transcript of hearing before the Statewide Grievance Committee.

**10. TRIAL TO COURT/JURY**

This case is to be tried by jury as to all issues.

**A. Plaintiff's Statement of Contested issues of law.**
   **(i) Plaintiff Claim Of Vexatious Suit**

Plaintiff asserts that the defendant Sharon Harper acting individually and in concert with Francis Miniter, Christine Corriveau and others, caused false charges of violation of the Rules of Professional Conduct to issue against the plaintiff, assisted in the prosecution of said charges and continued pursuing the said charges using perjured testimony even after it became clear that her charges were completely without substance. Defendant, was motivated in the pursuit of the said charges against the plaintiff not by a belief that the charges had any factual or legal merit or that probable cause for their issuance existed.  By her own admission, Harper acted for improper, illegal, and wrongful purpose, to-wit: Harper pursued a frivolous grievance against plaintiff for an alleged refusal to turn over her file despite the existence of a valid attorney's lien and even after the said files were given to successor counsel.  Harper and her agents conspired to and eventually offered perjured testimony in a hearing before the Statewide Grievance committee by falsely claiming that plaintiff failed to turn over the files until after August 2000.  Harper pursued the so-called grievance against plaintiff despite the knowledge that her files had been turned over when a letter of protection was provided to plaintiff.   Harper acted out of spite and malice to vex plaintiff, to cause plaintiff to spend inordinate amount of time in grievance proceedings and to force plaintiff to give up his claim for fees.   Defendant perjured herself and lied to the Statewide Grievance

Committee in an attempt to continue baseless charges against the plaintiff. The Statewide Grievance Committee subsequently dismissed the charges against plaintiff and the proceedings terminated in plaintiff's favor. As a direct result of the defendant's violations, plaintiff suffered economic damages, emotional distress and was injured. Plaintiff requests compensatory and punitive damages in an amount this Court shall consider to be just and fair.

There are four elements that a plaintiff must prove in a claim of vexatious litigation. Under Connecticut law, a plaintiff is required to prove that: (1) the defendant initiated or procured the institution of proceedings against the plaintiff; (2) those proceedings terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice. See, generally, Osp, Inc. v. The Aetna Casualty and Surety Co., 256 Conn. 343 (2001). "In a vexatious suit action, the defendant is said to have acted with `malice' if he acted primarily for an improper purpose; that is, "for a purpose other than that of securing the proper adjudication of the claim on which [the proceedings] are based'; 3 Restatement (Second), Torts § 676. . . . Thus, while malice may be inferred from the lack of probable cause, lack of probable cause may not be inferred from malice." (Citations omitted.) DeLaurentis, 220 Conn. at 256 n. 16. See also, Ancona v. Manafort Brothers, Inc., 56 Conn. App. 701, 710, 746 A.2d 184, cert. denied, 252 Conn. 954 (2000).

      **ii)**      **Whether Plaintiff Proves Defamation By Harper?**

The defendants' charges of incompetence, stealing and lack of skill are actionable under Connecticut law. In Proto v. Bridgeport Herald Corporation, 136 Conn. 557, 566, 72 A.2d 820 (1950), the court said: "It is well settled that a libel is actionable per see if it charges

improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his (sic) profession or business." See also later case of <u>Moriarty v. Lippe</u>, 162 Conn. 371, 386, 294 A.2d 326 (1972).

B. **Stipulations of Uncontroverted Facts**

Absolute refusal by defendant to cooperate in the submission of a Joint Trial Memorandum and refusal to answer e-mails and telephone messages made it impossible for the parties to confer in good faith to determine if any facts could be stipulated to as undisputed.

C. **Proposed Voir Dire Questions**

The plaintiff's proposed voir dire questions are attached hereto as **Exhibit A**.

D. **Proposed Jury Instructions**

The plaintiff's proposed requests for jury instructions are attached hereto as **Exhibit B.**

        **PLAINTIFF**

_____
Paul M. Ngobeni
**LAW OFFICES OF PAUL M. NGOBENI**
914 Main Street, Suite 206
East Hartford, CT 06108
Telephone (860) 289-3155
Facsimile (860) 282-7479

**CERTIFICATION**

This is to certify that a copy of the foregoing was mailed first-class on December 11, 2003 to:

Attorney Francis Miniter
Miniter & Associates
147 Charter Oak Ave.
Hartford, CT. 06106

-------------------------------------------------------
Paul M. Ngobeni